Bernice NETTERVILLE, Appellant,

v.

STATE OF MISSOURI, et al.,
Appellees.

No. 85–1638.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1986.

Decided Sept. 12, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 27, 1986.

William P. Russell, St. Louis, Mo., for appellant.

Theodore Bruce, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Netterville appeals the district court's adverse judgment against her Title VII claim and various rulings which led to a jury verdict against her §§ 1981 and 1983 claims. We affirm the decision of the district court.[1]

I. FACTS.

Bernice Netterville is a black female civilian employee of the Missouri State Highway Patrol, working as a driver-examiner. She has been with the Patrol for approximately nine years, having been hired as a clerk, and having worked her way up to the post of Driver-Examiner III. When a supervisor's position became available in March of 1983, Netterville decided that she would apply. The only statewide requirements for the supervisor's position were that the person have been a Driver-Examiner III for at least one year, in addition to five years service with the Highway Patrol. Other than these minimum qualifications, each troop within the Highway Patrol had the authority to determine what specific means it would use to make promotions.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The HONORABLE WILLIAM S. BAHN, United States Magistrate for the Eastern District of Missouri.

Before 1982 Troop C promoted civilian employees on the basis of seniority. No other factors were considered. While this had been the practice in Troop C, there was no written policy indicating that this procedure would be used. Prior to the changes at issue in this case, the last person who was promoted under the seniority system was a black male, Tom Bradford, who was offered the position after nine persons with more seniority had turned it down.

In 1982 Troop C officers Chief Examiner DeLano and Sergeant DeSalme decided that a testing procedure would be the best method to select the supervisor. DeLano prepared a twenty question essay test based on the material given to all driver-examiners and two reports required to be filled out as part of their jobs. He then sent the test to the Highway Patrol headquarters in Jefferson City, Missouri for approval. Although he never received written approval of the test, DeLano received approval from the headquarters over the telephone before the test was given in 1982.

Of those who met the minimum qualifications for the supervisor's position open in 1982, three persons expressed an interest in the promotion and took the test offered by Troop C. Of these three, a white male, Les Walsh, had the most seniority and would have received the promotion under the old system. The other candidates were Sylvia Whitener, a black woman, and Marie Klevorn, a white woman. Klevorn scored the highest on the test and received the promotion to supervisor.

In 1983 another supervisor's position became open. This was the first promotion to supervisor for which Netterville was eligible to apply. Prior to the opening being available, DeLano and his supervisor decided to improve upon the promotional testing procedure by including an oral interview board and the results of yearly evaluations. The 1983 promotion was based on the following factors: written test (30%), oral interview board (40%), and work evaluation (30%).

On March 14, 1983 an inter-office memo was sent out to supervisors announcing the supervisor's opening and requesting applicants. There was no mention of the procedures to be used in determining the promotions. Although the memo was not posted, Netterville's supervisor gave her the notification, talked to her about the test, and gave her information to study for the test.

In terms of seniority, Netterville was 21st of 23 Driver-Examiners III eligible for the opening. Of the seven persons who expressed an interest in the promotion and who applied for it, Netterville ranked sixth in seniority. The test was the same test that had been given for the 1982 promotion. Netterville scored 73 out of 120 possible points on the written test, and ranked sixth of the seven candidates for the promotion. Her ranking after the oral board and work evaluations improved slightly, but she finished fifth of the seven applicants. The man who scored highest on the promotion procedure was not offered the promotion because he had been reprimanded during the period of time in which the final scores were being tabulated. The woman who scored second highest, Peggy Pope, received the promotion. Pope had less seniority than Netterville.

At trial, Netterville claimed that the promotion procedures had been changed in order to discriminate against her because of her race. She testified that she had no idea what procedure would be used to make the promotion and upon what percentages it would be based. Under cross-examination, however, she admitted that she had stated in her deposition that she was told beforehand what procedure would be used and upon what percentages the decision would be based. The jury returned verdicts in favor of defendants DeLano and Hoffman on her §§ 1981 and 1983 claims, and thereafter the court entered a judgment for the defendants on her Title VII claim.

II. THE VERDICT DIRECTIVE INSTRUCTION.

■ Netterville claims the district court erred in refusing to submit her verdict

directive instruction for §§ 1981 and 1983, instead submitting an instruction which was a misstatement of the law and confused the jury. We have considered appellant's argument and conclude that the district court has committed no error, and that if any error has been committed it was not prejudicial to the appellant's case.

## III. THE TESTIMONY OF CHARLES JACKSON.

Appellant asserts that it was error for the district court to exclude the reading of portions of a deposition she had taken of Charles Jackson and of Charles Jackson's subsequent direct testimony. Her offer of proof was that Jackson would testify Marie Klevorn told him that she (Klevorn) had coached three persons who took the test and that one of those she had coached received the job. The trial court excluded Jackson's deposition testimony and direct testimony as hearsay. She asserts that the proffered evidence was not hearsay, maintaining that the evidence was not offered to prove the truth of the matter asserted and that it should have come in as an exception to the hearsay rule under Rule 803(24)(B).

■ Netterville asserts that Jackson would have testified that Klevorn coached Peggy Cope, in spite of Klevorn's later testimony that she had not. Because Netterville fails to explain on what if any alternative basis this evidence might have been admissible, we would therefore conclude that the statements were offered for their truth and were hearsay. In addition, we do not believe that Jackson's testimony would have been admissible as a hearsay exception under Rule 803(24)(B). Under Rule 803(24)(B), the hearsay statement must be more probative on the point for which it is offered than any other evidence which the proponent may reasonably have procured. In this case the testimony eventually elicited of Marie Klevorn herself that she had not coached Peggy Cope for the written test was more probative than Jackson's recollections. We therefore conclude that

the district court did not err in excluding Jackson's testimony as hearsay evidence.

## IV. SUFFICIENCY OF THE EVIDENCE ON THE §§ 1981 AND 1983 CLAIMS.

■ Netterville asserts that the jury verdict goes against the weight of the evidence in that she did not have notice of the change in the promotion procedure and that the State had not satisfied its duty to inform her of the change in the procedures. She claims that she was not notified of the vacancy until three or four days before Chief Examiner DeLano was to be notified that she wished to be considered. To make out a claim under § 1981 or § 1983, Netterville must show that this failure to give notice of the change in the procedures was the result of intentional racial discrimination. *Taylor v. City of St. Louis,* 702 F.2d 695, 697 (8th Cir.1983) (per curiam). Viewing the evidence in a light favorable to the appellees, we cannot conclude that appellant provided the jury with even the inference that the failure to give notice of the changes in the promotion procedures was based on the intent to discriminate against her because of her race.

We so conclude because she admitted under cross-examination that she knew before taking the written test that the promotion procedures had been changed and that she would be asked to take the written test, an oral test, and have her work record evaluated. (Tr. 49). In fact, she admitted on cross-examination that she was even told what percentage each portion would constitute. (Tr. 53). Furthermore, the fact that notice was not posted does not in itself establish intent to discriminate. Rather, in this case, it was reasonable for Marie Klevorn to hand deliver the announcement of the job opening because Netterville was the only driver-examiner who was eligible at her station for the promotion.

Netterville also maintains that the jury decision was against the weight of the evidence in that the appellees had a duty to send out notice that seniority would no longer be used as the basis for promotions. She fails to point out, however, that there

was no written policy establishing seniority as the basis for promotions. To the contrary, the State had only published minimum qualifications and nothing prohibited individual troops from developing procedures for promotion within these minimum qualifications. In addition, the fact that there was no notice of the change from the seniority system to the written examination does not establish an intent to discriminate. Rather, the failure to notify would apply equally to all applicants for the promotions and would not establish discrimination against Netterville on the basis of her race.

We therefore believe that the jury could reasonably find that she had not carried her burden of proving intent to discriminate on the basis of her race in the failure to notify her of the changes in the promotion procedure.

## V. SUFFICIENCY OF THE EVIDENCE ON THE TITLE VII CLAIM.

Netterville asserts the district court erred in concluding that she had not presented a prima facie case of disparate impact or disparate treatment based on Title VII.

### A. Disparate Impact.

For the first time on appeal, Netterville asserts that the written test, although neutral on its face, had a racially disparate impact on black driver-examiners. She further maintains that the test was not properly validated so as to remove the inference of its discriminatory impact. Because she failed to plead disparate impact, it would appear that she has waived her right to assert it on appeal.

■ Even if there were reason to believe that she has not waived her right to assert disparate impact, we would have to conclude that the district court did not err in denying her Title VII claim under this theory. Netterville produced no evidence at trial that the testing procedure used had a disproportionate impact on black driver-examiners. On the contrary, the adoption of the promotion mechanism improved her chances of being promoted to the supervisor's position. Under the old seniority sys-

tem, she was 21st of 23 Driver-Examiners III eligible for the promotion. Of those who asked to be considered for the opening, she was sixth of the seven candidates. In addition, she admitted at trial that the questions contained information she would need to know to be a supervisor. We would therefore conclude that, even if she had properly raised a claim of disparate impact, the district court did not err in finding that she had not presented sufficient evidence of disparate impact.

### B. Disparate Treatment.

A prima facie case of racial discrimination under Title VII may be shown by establishing the elements set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973):

This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.*

At the outset, we would have to conclude that the district court erred in its decision that Netterville had not made out a prima facie case of disparate treatment. Indeed, the magistrate stated that the plaintiff was a member of a protected group, that she was qualified for the position, that despite her qualifications she was rejected, and another woman hired instead. The court seems to have concluded that, because she was not as qualified as the person who was given the promotion, she has not made out a prima facie case. To make her initial showing under *McDonnell Douglas*, it is not necessary that she be the most qualified person for the promotion; it is only necessary that she have the minimum requirements for the position. Netterville

therefore made out a prima facie case under Title VII.

Once we hold that the district court erred in failing to acknowledge the plaintiff's proof of a prima facie case of disparate treatment, the proper procedure is to remand the case to the district court for a de novo review of the record. *See Wells v. Gotfredson Motor Co., Inc.*, 709 F.2d 493, 496 (8th Cir.1983) (Lay, Chief Judge, dissenting). This will not be necessary in this case, however, in light of the fact that the district court proceeded to the merits of the dispute.

 The appellant having established a prima facie case under Title VII, the burden then shifts to the appellees to explain clearly the non-discriminatory reasons for their actions. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The appellees stated that they changed from the seniority method in order to find a more fair method to select the best person available for the promotion, and to seek the person who had the most knowledge about the supervisor's position. Netterville was not promoted to the position of supervisor because she did poorly on the written test, finishing sixth of seven candidates. We would therefore conclude that the appellees have presented legitimate, non-discriminatory reasons for changing the promotion procedure and for the resultant failure of Netterville to be promoted to the supervisor's position.

The appellees having carried their burden, appellant must then prove by a preponderance of the evidence that the reasons offered were not their true reasons, but were a pretext for discrimination. Netterville asserts that had the promotion procedure not been changed, she would have been promoted to the supervisor's position based upon experience and seniority. In support of her assertion, she points out that in 1981 Tom Bradford was promoted to supervisor although he was ninth on the list at the time he was chosen. The simple fact is, however, that she was 21st of 23 driver-examiners eligible for the supervisor's position. Of the seven persons who stated they were interested in the promotion, she was sixth in terms of seniority. She would not have been promoted under the seniority system.

She also maintains that the abrupt changes in the testing mechanism were a pretext to discriminate against her because of her race. Netterville admitted at trial, however, that she knew that a testing mechanism was used to evaluate the three candidates for the supervisor's position in 1982. She had been told of the elements to be used for the promotion, including percentages to be used, prior to taking the written examination. Furthermore, prior to ever using the test, the questions and answers were forwarded by defendant De-Lano to the Highway Patrol Headquarters where they were reviewed and approved. We would therefore conclude that the weight of the evidence supports the district court's decision on the merits that Netterville had failed to prove that the non-discriminatory reasons were a pretext to discriminate against her on the basis of race.

For all of the foregoing reasons, we affirm the decision of the district court.