Court therefore concludes bond is not required.

An appropriate order will accompany this memorandum.

### ORDER

In accordance with the Memorandum filed on this date and incorporated herein,

After careful consideration,

**IT IS HEREBY ORDERED** that plaintiff's motion for preliminary injunction is **GRANTED.** [Doc. 2]

**IT IS FURTHER ORDERED** that defendant shall be preliminarily enjoined from (i) preventing plaintiff from competing in any Hancock High School baseball games or district or state tournament games; and (ii) imposing any penalty, discipline or sanction on any school for which or against which plaintiff competes in these games.

**IT IS FURTHER ORDERED** that this preliminary injunction shall remain in effect until a hearing is held on plaintiff's request for permanent injunction.

**IT IS FURTHER ORDERED** that plaintiff shall not be required to post bond.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss is **DENIED.** [Doc. 6]

Carolyn **LIDGE–MYRTIL**, Plaintiff,

v.

**DEERE & COMPANY, d/b/a John Deere Company,** Defendant.

No. 93–0570–CV–W–1.

United States District Court,
W.D. Missouri,
Western Division.

July 7, 1994.

Aunna Peoples, Kansas City, MO, for plaintiff.

Ann Mesle, Kansas City, MO, for defendant.

### OPINION & ORDER

WHIPPLE, District Judge.

Pending before the Court is Defendant's motion for summary judgment, together with suggestions in support, filed on April 4, 1994. Plaintiff filed suggestions in opposition on May 2, 1994, to which Defendant filed reply suggestions on June 13, 1994. After due consideration of the above, for the reasons set forth below, said motion is granted.

### I. Summary Judgment Standard

A movant is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of proof. *Aetna Life Insurance Co. v. Great National Corp.*, 818 F.2d 19, 20 (8th Cir.1987).

After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). In addition, the Court is required to resolve all doubts as to the facts or existence of any material fact against the moving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to a brief examination of the facts.

### II. Factual Background

Pursuant to Local Rule 13(G), Defendant sets forth 47 uncontroverted material facts in support of its motion for summary judgment. The same rule requires Plaintiff to specifically list those facts she contends are in dispute, together with a reference to a portion of the record supporting such assertion. Concerning the vast majority of the facts set forth by Defendant, Plaintiff fails to comply with this simple procedure. Accordingly, those facts which were uncontroverted, are deemed admitted for the purpose of this Order, and together with those uncontroverted facts set forth in Plaintiff's suggestions in

opposition, form the basis for the Court's understanding of the factual background.

In August of 1974, Plaintiff, a black female, began working for Defendant at 3210 East 85th Street in Kansas City, Missouri as a Data Entry Operator, a Grade 2 position. Over the course of fifteen years, Plaintiff unsuccessfully sought promotions to various Grade 3 secretarial positions.[1] On July 27, 1992, Plaintiff was again denied such a promotion, this time to Human Resources Secretary. In her place, Defendant promoted Cindy Bundschuh, a white female. Plaintiff, who is six hours away from her undergraduate degree,[2] asserts that she was more qualified and had more seniority than Ms. Bundschuh.

The Human Resources Secretary position involves assisting the department executives by screening communications, handling routine correspondence, answering employee inquiries and providing information to persons outside the company. The position requires the Secretary to have access to personnel files, employee benefits and salary information, as well as other personal and sensitive information. The position demands excellent interpersonal and communication skills, as well as a high degree of confidentiality and discretion. Defendant explains its decision not to promote Plaintiff as a function of Plaintiff's poor interpersonal skills and excessive personal phone use,[3] both of which are reflected in Plaintiff's personnel file and performance appraisals for 1989 through 1991. On a number of occasions during this time period, Plaintiff was required to meet with management to discuss these deficiencies and

received a number of disciplinary reports relating to such.[4]

Ms. Bundschuh was hired by Defendant in January of 1980 in Waterloo, Iowa as a Record Clerk, a Grade 2 position. In July of 1987 when Defendant downsized is Waterloo operations, she voluntarily relocated to Kansas City, holding the same position and grade. She was promoted to Credit Clerk, Grade 3 in May of 1990. As Credit Clerk, now titled Finance Department Secretary, Ms. Bundschuh's job duties included the same essential secretarial and administrative assistance duties as required for the Human Resources Secretary position. Ms. Bundschuh's performance evaluations while employed with Defendant have been very good and reflect good teamwork skills. Ms. Bundschuh's personnel file does not contain any disciplinary reports or meetings. At the time when Ms. Bundschuh received the Human Resources Secretary position, she had a Bachelor's degree in Recreation, an Associate's degree in Education, and had taken college courses in accounting.

On August 4, 1992, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights ("Missouri Commission") and the United States Equal Opportunity Employment Commission ("EEOC") alleging that Defendant's failure to promote her to this position constituted discrimination on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964. On March 17, 1993, the EEOC rendered a determination of "No Probable Cause," and on June 25, 1993, the Missouri Commission followed suit. Plaintiff brought this action on June 14, 1993, within 90 days of receipt of

---

1. Between 1977 and 1980, Plaintiff held a Grade 3 position as a Terminal Entry Operator, but was demoted upon her request. In 1992, Plaintiff was laterally transferred to the position of Record Clerk.

2. This fact is contained in Plaintiff's Exhibit O, a letter written by Plaintiff on October 6, 1992 to Ms. Douglas.

3. Defendant also contends that Plaintiff's lack of discretion in handling confidential information was another motivating factor in denying her this promotion. However, because Defendant failed to supply the Court with any evidence of such beyond the bald assertions of various manage-

ment officials, the Court will not consider this factor in ruling on this motion.

4. For example, on July 10, 1991, Plaintiff met with Controller Lyle Feld and Supervisor Sandy Sites regarding a telephone usage report that indicated Plaintiff's extension handled 326 telephone calls during May of 1991, approximately 20 hours for the month, or 55 minutes a day. Of these calls, Plaintiff placed 189. Plaintiff admits that she placed on average ten personal phone calls per day and that she was aware that her supervisors believed this amount was detrimental to her work. Mr. Feld met with Plaintiff again in September of 1992 regarding the same problem.

the EEOC's right-to-sue letter as required by 42 U.S.C. § 2000e–5(f)(1). Plaintiff's three-count Complaint alleges Defendant's failure to give her this promotion constituted race discrimination in violation of Title VII, 42 § 1981, and the Missouri Human Rights Act.

### III. Discriminatory Incidents

Pursuant to the Court's October 7, 1993 Scheduling Order, Plaintiff filed a Designation of Discriminatory Incidents on December 13, 1993. In said filing, Plaintiff lists ten incidents where white employees were treated more favorably than black employees. Five of these incidents involved situations in which Plaintiff applied for promotions but Defendant gave them to white employees. However, the only claim of discrimination mentioned in the Complaint involved the incident discussed above, namely Defendant's July 27, 1992 decision not to promote her to Human Resources Secretary. Consequently, subject to the Federal Rules of Evidence, Plaintiff would be permitted to introduce evidence concerning the other nine incidents only as circumstantial evidence of discrimination vis-a-vis the specific claim of discrimination pled in the Complaint. Consequently, when determining whether summary judgment is appropriate, the Court will focus squarely on this incident.[5]

### IV. Title VII Claim

■ Defendant asserts that Plaintiff's Title VII claim fails as a matter of law because Plaintiff cannot make out a prima facie case of discrimination pursuant to *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The requisite elements of a prima facie case for discriminatory failure to promote are as follows:

1. (s)he is a member of a protected group;

2. that (s)he applied for and was qualified for a job in which the employer was seeking applications;

3. that despite her qualifications, she was rejected; and

4. that after rejection the position remained open and the employer continued to seek applications from persons of employee's qualifications.

*Netterville v. State of Missouri*, 800 F.2d 798, 802 (8th Cir.1986).

■ There is no dispute with respect to the first and third elements, Plaintiff is black and was not given the promotion at issue in this case. Concerning the fourth element, Defendant incorrectly contends that Plaintiff must show that she was as qualified or more qualified than the selected candidate. From a simple reading of *Netterville*, it is clear that Defendant misinterprets this element. Plaintiff need only show that she has "the minimum requirements for the position." *Id.* at 802–03. It is inappropriate to weigh Plaintiff's qualifications against those of the selected candidate at this stage of the litigation. Rather, such weighing of qualifications properly takes place during the pretext stage. *See Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096–97; *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir.1988). Therefore, the Court turns its attention towards the issue of whether Plaintiff was qualified for the position, the second element of her prima facie case.

■ As alluded to above, Defendant claims Plaintiff was not qualified for the position because of her alleged poor interpersonal skills and excessive personal phone use. Plaintiff contends that she was qualified based upon an "average" evaluation on interpersonal skills in 1991, and favorable ratings on job knowledge, accuracy, adaptability, problem solving, relation with supervisor, work skills and productivity. Additionally, Plaintiff points out that some employees receiving promotions also had been given negative ratings on interpersonal skills. Finally, Plaintiff notes that her 1990 performance appraisal indicates that her "overall ... performance has been very good." Because the Court is required to scrutinize all the evidence in the light most favorable to Plaintiff, and because the burden of establishing a

---

**5.** As a result of this determination, the Court need not rule on the issue of whether the other four incidents of discrimination are within the scope of Plaintiff's EEOC charge under *Satz v. ITT Financial Corp.*, 619 F.2d 738, 741 (8th Cir.1980).

prima facie case is "not onerous," *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094, the Court determines that genuine issues of material fact remain as to Plaintiff's qualifications for the position. This determination makes summary judgment on this basis inappropriate.

 After Plaintiff has put forth facts sufficient to make out a prima facie case of race discrimination, Defendant has the burden of articulating a legitimate nondiscriminatory reason for the decision not to promote Plaintiff. *Id.* Defendant contends that its assertion of Ms. Bundschuh's superior qualifications meets this burden. The Court agrees. *Pierce,* 859 F.2d at 603. Consequently, the presumption of discrimination raised by the prima facie case is rebutted, and the burden shifts to Plaintiff to show that Defendant's proffered reason is pretextual, that it is merely a mask for Defendant's intentional discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95. Where an employee is unable to show pretext, summary judgment is appropriately granted. *Pierce,* 859 F.2d at 604.

 After a thorough review of the record, the Court concludes that after scrutinizing Plaintiff's evidence in the light most favorable to her, Plaintiff has failed to put forth "sufficient evidence in [her] favor to allow a jury," *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511, to determine that Defendant's explanation for failing to promote her is pretextual.[6] In short, it appears to the Court that Defendant's stated belief that Ms. Bundschuh was more qualified for the position than Plaintiff finds substantial support in the record. On the basis of prior work experience, academic credentials, job evaluations, and disciplinary meetings/reports, Defendant could reasonably determine that Ms. Bundschuh was the more qualified candidate for the position. Simply because a white employee is given the position sought by a qualified black employee does not, by itself, establish race discrimination. *See Pierce,*

859 F.2d at 604. As the Supreme Court stated in *Burdine:*

> The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions. Title VII, however, does not demand that an employer give preferential treatment to minorities or women. The statute was not intended to diminish traditional management prerogatives. It does not require the employer to maximize the number of minorities and women hired.

450 U.S. at 259, 101 S.Ct. at 1096–97 (internal citations omitted). Accordingly, the Court will not interpret Title VII as preventing employers from making merit based employment decisions. The Court enters summary judgment for Defendant on Count I of Plaintiff's Complaint.

## V. Section 1981 Claim

 In Count II, Plaintiff asserts a violation of 42 U.S.C. § 1981 upon the same factual basis supporting Plaintiff's Title VII claim. Section (a) of this statute provides, in relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens....

Section (b) defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts." Thus, § 1981 is clearly applicable to Plaintiff's claim of discriminatory failure to promote on the basis of race. However, Plaintiff's § 1981 claim fails for the same reason that her Title VII claim fails, namely that Defendant has articulated a legitimate nondiscriminatory reason for its failure to promote her, and Plaintiff has failed to put forth sufficient evidence of pretext. *Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992). Accordingly, the Court enters summary

---

6. The Court is somewhat troubled by Plaintiff's assertion that between 1974 and 1992, there were no black employees holding secretarial positions with Defendant in the office where Plaintiff worked. However, because Plaintiff fails to provide the Court with any documentation to support this assertion, or to indicate the size of the office, the Court cannot allow this assertion to enter into its determination of the merits of this motion.

judgment for Defendant on Count II of Plaintiff's complaint.

## VI. Missouri Human Rights Act Claim

In Count III, Plaintiff asserts a violation of the Missouri Human Rights Act upon the same factual basis asserted in Counts I and II. The three-step *McDonnell Douglas* analysis for Title VII claims, discussed above, is applicable to claims under this state act. *Missouri Commission on Human Rights v. City of Sikeston*, 769 S.W.2d 798, 801 (Mo.App.1989). Thus, because Plaintiff failed to put forth sufficient evidence of pretext to defeat a summary judgment motion concerning her Title VII claim, the Court will enter summary judgment on her claim under the Missouri Human Rights Act as well.

## VII. Remedy

Accordingly, it is ORDERED that Defendant's motion for summary judgment on Count I, II and III of Plaintiff's Complaint is GRANTED.