576 F.Supp. 185 (1983)
LeVelle CLAY, Plaintiff,
v.
CONSUMER PROGRAMS, INC., Defendant.
No. 82-518C(2).
United States District Court, E.D. Missouri.
September 28, 1983.
*186 Ernest L. Keathley, Jr., St. Louis, Mo., for plaintiff.
Michael J. Bobroff, Stephen B. Higgins, St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits after trial to the Court. Plaintiff brings this action in two counts. Count I alleges that defendant denied plaintiff a promotion to the position of supervisor on account of his race and national origin in violation of 42 U.S.C. § 2000e-2(a). Count II alleges that defendant retaliated against plaintiff in various ways for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of 42 U.S.C. § 2000e-3. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' stipulation of facts, the parties' briefs, and the applicable law, the Court enters the following memorandum which it adopts as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.
Plaintiff is a black, male citizen of the United States and the State of Missouri, residing within the Eastern District of Missouri in the City of St. Louis. Defendant is a Missouri corporation located in and doing business in the City of St. Louis, Missouri. At all times relevant to this lawsuit, defendant employed fifteen or more employees. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.
Defendant is engaged in the business of operating photography studios in department stores, providing services to commercial accounts, and developing and processing film. In the relevant time period of 1979 and 1980, defendant was also engaged in the business of providing promotional portrait photography services to banks and churches.
Defendant's operations include shipping, receiving, and stockroom departments, which are organized under what is known as the Material Control Department, or Warehouse. This department is responsible for the expeditious and timely handling of shipping and receiving all products and supplies, including film, film orders, photographic supplies, customer sitting tickets, and like items. Accurate and prompt service to defendant's millions of customers is critical to the company's business.
The Material Control Department is organized in such a fashion that ultimate control rests with the Assistant Vice President, Purchasing. Reporting to the Vice President is the Manager of the Material Control Department. Reporting to the Manager is a supervisor, and from October 1, 1979, two supervisors. Four foremen report to the supervisor. Those foremen are the night shipping foreman, the day shipping foreman, the receiving foreman, and the stockroom foreman.
Plaintiff was employed by defendant in various capacities from June 1, 1971, until March 11, 1980. In October, 1973, plaintiff *187 was promoted to the position of shipping foreman. In January, 1979, plaintiff was transferred to the Receiving Department as receiving foreman. Finally, in July, 1979, plaintiff was transferred back to his old position as shipping foreman, the position he held until he was terminated on March 11, 1980.

I. FAILURE TO PROMOTE
Plaintiff alleges that defendant's failure to promote him to the position of supervisor in October, 1979, was on account of his race and national origin in violation of 42 U.S.C. § 2000e-2(a).[1]
In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.[2] Plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff succeeds in proving the prima facie case by a preponderance of the evidence, the burden shifts to defendant to articulate "some legitimate, nondiscriminatory reason for the employee's rejection." Id. Finally, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. 411 U.S. at 804, 93 S.Ct. at 1825. The Court must remember, however, that the ultimate burden of persuading the trier of fact remains at all times with the plaintiff. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).
In order to establish a prima facie case for discriminatory failure to promote, plaintiff must show: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which his employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. Royal v. Missouri Highway and Transportation Commission, 655 F.2d 159, 163 (8th Cir.1981); Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1275 (9th Cir.1981); Danner v. United States Civil Service Commission, 635 F.2d 427, 431 (5th Cir.1981).
An examination of the credible evidence presented persuades this Court that plaintiff has failed to satisfy the second element of his prima facie case.
In January, 1979, Jim Nutall, the supervisor at that time, was promoted to the position of assistant to the vice president in charge of purchasing and material control. Shortly after Nutall was promoted, Larry Moss, Assistant Vice President, Purchasing, Greg Boyer, Manager of the Material Control Department, and Nutall discussed *188 the prospect of filling the supervisor position. Plaintiff, along with three other black foremen and two other white employees, were initially considered. Both Boyer and Nutall recommended that the position not be filled immediately. Boyer expressed the hope that some of the people under consideration, including plaintiff, would show initiative and drive in the ensuing months and thus earn the job. In the meantime, because it was the slow season of the year, Boyer operated without a supervisor, getting help from Nutall from time to time on an as needed basis.
Plaintiff initially expressed an interest in the job to Boyer and Nutall. Nutall encouraged plaintiff to do a good job in his present position and demonstrate by his work that he should get the position.
In late summer and early fall of 1979, with the busy season coming up, Moss turned again actively to the question of filling the supervisor's position. Because of the increasing problems with absenteeism, tardiness, and low productivity, he had earlier received authority from higher management to hire two supervisors rather than one. As part of the search process, Moss considered six potential applicants from within the department. Among the six were plaintiff, the other three black foremen, and two white employees. Moss reviewed their personnel folders and discussed their performance with Boyer and Nutall.
Although Moss was indeed seeking to fill the supervisor positions at this time, notice of this fact was not posted on the company bulletin boards. The Court finds the credible evidence to show, however, that the reason for this failure was the fact that this position was a management position. It had been defendant's policy in the past to post notices of vacancies only in regard to non-management positions. Plaintiff's assertion of management's discriminatory motives in this regard is therefore unjustified.[3]
The Court finds the credible evidence to show that Moss rejected all of the original six potential candidates because he perceived them to be unqualified for the position of supervisor. In his consideration, Moss sought the advice of both Nutall and Boyer, who concurred in his decision. In addition, Russell Isaak, Executive Vice President of the company and Moss' superior, relayed to Moss management's dissatisfaction with the Material Control Department. Isaak specifically recommended that persons within the department not be promoted because they were part and parcel of the problems that the Department was experiencing.
Although plaintiff had received generally favorable ratings during his original tenure as shipping foreman, the credible evidence shows that his performance after being transferred to the receiving department in January, 1979, was less than satisfactory. Additionally, Moss testified that plaintiff's leadership skills were never very strong. The Court finds this testimony to be credible.
By contrast, the persons later hired by defendant as supervisors had exhibited the skills for which management was looking.
Al Hellman had worked in the special events section under Moss. Hellman had shown excellent leadership skills in managing the shipping and receiving aspects of high-volume, short-deadline operations.
Ken Carter had been a non-commissioned officer in the United States Air Force. He *189 had worked in a supply area and had been in charge of up to forty people. In his interview, Carter impressed Moss with his thoughts about how to handle such problem areas as absenteeism and low productivity and his attitude about taking quick corrective actions where necessary. Moss was also impressed that Carter was very positive on the subject of training because of his Air Force experience, and he felt that Carter had a good ability to communicate.
The Court therefore finds that plaintiff did not possess the skills and qualifications that management thought were necessary for the position of supervisor. Plaintiff has thus failed to satisfy the second element of his prima facie case. Royal v. Missouri Highway and Transportation Commission, supra.
Assuming arguendo that plaintiff was minimally qualified for the position of supervisor, the Court finds that defendant has articulated a legitimate, non-discriminatory reason for plaintiff's rejection and that plaintiff has failed to show that this reason was but a pretext for discrimination.
The credible evidence shows that defendant's management believed that Carter and Hellman possessed better supervisory skills than did plaintiff and that this was the reason for defendant's failure to promote plaintiff to the position of supervisor. This is clearly a legitimate reason.
Plaintiff offered no credible evidence that persuades this Court that this reason was pretextual. Plaintiff testified that, prior to October, 1979, he had never received discriminatory treatment from defendant. Indeed, plaintiff testified that a fellow employee who called him "nigger" was later fired by defendant for that reason. The testimony of several of plaintiff's witnesses indicated that everyone employed in the Materials Control Department was treated equally.
From the credible evidence, therefore, the Court finds that plaintiff has failed to show that the reason offered by defendant for its refusal to promote plaintiff to the position of supervisor was but a pretext for discrimination. Further, the Court finds that plaintiff has failed to meet his ultimate burden of showing discriminatory intent on the part of defendant.

II. RETALIATION
Plaintiff alleges that defendant retaliated against him in various ways for filing a charge with the EEOC on October 15, 1979, in violation of 42 U.S.C. § 2000e-3.[4]
The McDonnell Douglas formulation of burdens and order of proof has been held to be specifically applicable to retaliation claims under § 2000e-3. Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). In order to establish a prima facie case of retaliation, plaintiff must show: (1) statutorily protected participation; (2) adverse employment action, and (3) a causal connection between the two. Id.
There is no question that plaintiff engaged in a statutorily protected activity when he filed an EEOC charge against defendant on October 15, 1979. The Court also finds that several of the alleged acts of retaliation were sufficiently adverse to plaintiff to satisfy the second element of his prima facie case. Plaintiff's problem lies, however, in his inability to establish a causal connection between his filing of a charge with the EEOC and later adverse employment actions.
First, plaintiff claims that, as a result of his EEOC filing, the company made an adverse employment decision requiring him to check in when he left the Material Control area. The uncontroverted evidence, however, establishes that this decision was *190 not made because of plaintiff's EEOC filing but was part of a broad change in rules instituted by defendant in 1979 to control problems of absenteeism, tardiness, and low productivity. This rule, along with the other rules, applied to everyone equally.
Second, plaintiff claims retaliation in defendant's directive that he punch a time clock rather than fill out a time card. The credible evidence again establishes that this action was not in retaliation for plaintiff's EEOC filing, but simply a mechanism to combat problems of time card fraud with hourly employees. This decision also applied equally to all foremen.
Third, plaintiff claims that defendant retaliated against him because Boyer directed obscene and racially derogatory language at him. The testimony of virtually all the witnesses, including many of plaintiff's witnesses, however, establishes that coarse language was common in the Material Control Department, that it was used in a matter-of-fact or joking way, and that plaintiff himself used the same kind of language. The only witness who supported plaintiff's assertion that Boyer directed such language toward plaintiff was Royce Limbert. After considering the demeanor and inconsistencies in Limbert's testimony, the Court finds it to lack credibility. Even assuming Boyer did direct derogatory language toward plaintiff, there was no credible evidence to show that the use of such language was precipitated by plaintiff's EEOC filing.
Finally, plaintiff alleges that his termination in March of 1980 was in retaliation for his EEOC filing. The Court finds that plaintiff has introduced no credible evidence to support this allegation, and that, in fact, plaintiff's termination was caused by his insubordination and attitude problems.
In late 1979 and early 1980, defendant began experiencing problems with the handling of sitting tickets, which was Limbert's responsibility. Plaintiff was Limbert's foreman. In late February, 1980, Boyer asked plaintiff to complete a simple time/motion evaluation of Limbert's work. Plaintiff refused to do so.
Boyer and Moss then met with plaintiff to explain the purpose of the report and to tell him exactly what they wanted done. Moss even showed plaintiff what he wanted done. When they finished, plaintiff again refused to prepare the report. He was warned that his refusal could lead to disciplinary action and termination, and he was given until the next Thursday to complete the report.
When the Thursday arrived, plaintiff had not prepared the report. Moss suspended plaintiff for one day, and told him to return to work after the suspension, and to complete the report or face termination.
Plaintiff returned to work on March 11, 1980, and reported to Isaak, because Moss was on vacation. Isaak met with plaintiff three times that day and gave plaintiff two more chances to complete the report. In the end, he failed to complete the assigned task as instructed and he was then terminated.
The Court concludes that plaintiff's contention that his termination and other acts by defendant were in retaliation for his EEOC filing is not supported by credible evidence. Defendant has offered legitimate reasons for each of the actions taken and plaintiff has failed to show that the reasons offered were pretextual.
For the foregoing reasons, the Court will award judgment in favor of defendant and against plaintiff on both counts of plaintiff's complaint. The Court will deny, however, defendant's request for attorney's fees because the Court does not find that plaintiff's lawsuit was "frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).
NOTES
[1] 42 U.S.C. § 2000e-2(a) provides:

(a) It shall be an unlawful employment practice for an employer 
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
[2] The Court recognizes that under Title VII, claims of racial employment discrimination may arise in two different ways. "Disparate treatment" involves the situation where the employer simply treats some people less favorable than others because of their race. See, e.g., International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Such are the allegations here. Where the Title VII claim is that facially neutral employment practices actually fall more harshly on one racial group, the claim is one of "disparate impact." See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1974). The methods of proof with regard to establishing each of these claims differ. See Furnco Construction Corp. v. Waters, 438 U.S. 567, 581-83, 98 S.Ct. 2943, 2952-53, 57 L.Ed.2d 957 (1978).
[3] The Court finds untenable plaintiff's position that defendant's policy of not posting notices of vacant supervisory positions is, in itself, sufficient to constitute a violation of Title VII. The cases cited by plaintiff for this proposition, Reed v. Arlington Hotel Company, Inc., 476 F.2d 721 (8th Cir.1973), and Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir.1972), are inapposite. Both cases were "disparate impact" cases. As indicated in note 2, to prevail on this theory, plaintiff must show that the failure to post such notices had a disparate impact on blacks. Plaintiff offered no evidence as to the number of blacks which were hired in supervisory positions as compared with the number of whites. Additionally, even when this is shown, neither case stands for the proposition that this practice is sufficient in itself to constitute a violation of Title VII.
[4] 42 U.S.C. § 2000e-3 provides in pertinent part: (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.