Julian E. VALDEZ, Appellant,

v.

MERCY HOSPITAL, an Iowa Non-
Profit Organization and
Corporation, Appellee.

No. 91–2615.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 21, 1992.

Decided April 27, 1992.

Martin A. Diaz, Iowa City, Iowa, argued, for appellant.

Thomas J. Pastrnak, Davenport, Iowa, argued, for appellee.

Before FAGG, BOWMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Julian E. Valdez appeals from the District Court's [1] entry of judgment in favor of defendant Mercy Hospital on Valdez's employment discrimination, discriminatory discharge, and retaliatory discharge claims. We affirm.

Valdez, a Mexican–American, first contends that the District Court erred in finding, at the conclusion of his bench trial, that he was not subjected to discriminatory harassment [2] while employed at Mercy, and in holding that he was not discharged in violation of Title VII, 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a) (1988).[3]

We will reverse the District Court only if we determine that its findings are clearly erroneous. Fed.R.Civ.P. 52(a); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This is a narrow standard and requires us to defer to any plausible recounting of the evidence made by the District Court, as we are not permitted to second-guess the trial court's view of the evidence. *Id.* at 574, 105 S.Ct. at 1511. After a thorough review of the record, we conclude that the court properly entered judgment in favor of Mercy.

We focus first on Valdez's claim that he was subjected to harassment based on his race (national origin). Valdez was employed as an alcoholism recovery counselor at Mercy from October 20, 1980, until his involuntary termination on May 28, 1985. Valdez was hired by William Hughes, then director of the Mercy Alcohol Recovery Center (MARC), who was Valdez's supervisor until November 1984. Beginning at that time, and continuing until Valdez's termination, Michael Shovlain had supervisory responsibility for Valdez.

The Hughes–Valdez relationship, by and large, was not characterized by unusual animus. There is some indication in the record that the two did not always agree on treatment styles, but there was no open hostility. There also was testimony that Hughes was known for telling ethnic jokes. In late 1981, Hughes was seen circulating, or at least showing to other MARC employees, a handwritten "Mexican Sex Manual" and a "Polish Sex Manual." Valdez did not complain to Hughes or anyone else about Hughes's sense of humor, but he did ask Hughes for, and received, the "Mexican Sex Manual."

Valdez made other allegations about Hughes that, he asserts, demonstrate that

---

**1.** The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

**2.** Although Valdez refers in his brief to his claims of "race discrimination," we will presume that as a Mexican–American he actually is claiming discrimination based on his national origin. 42 U.S.C. § 2000e–2(a) (1988). "Mexi-

can" and "Mexican–American" are no more descriptive of race than is the term "American."

**3.** According to the opinion of the District Court, Valdez also brought a claim under the Iowa Civil Rights Act, Iowa Code ch. 601A. He does not argue any violation of Iowa law on this appeal.

Hughes discriminated against him because of his race (ethnicity). We cannot agree. Clearly there were personality conflicts between Valdez and other MARC staff members, including Hughes, during Valdez's term of employment with Mercy, but these conflicts, even taken with Hughes's ethnic humor, did not rise to the level of severity or pervasiveness necessary to demonstrate a discriminatorily hostile work environment actionable under Title VII. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989); *cf. Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (sexual harassment). The District Court's holding that Valdez was not subjected to discriminatory harassment is not clearly erroneous.

■ Turning next to Valdez's claims that his discharge violated Title VII, we agree with the District Court that Valdez failed to prove his case.

In October 1984, Valdez received a somewhat negative employee evaluation from Hughes and no salary increase, situations he had not encountered previously in his employment at Mercy. Early in November he filed a complaint against Hughes and Mercy with the Civil Rights Commission in Davenport. Soon after, but before Mercy was aware of the civil rights complaint, Valdez was transferred from the outpatient unit to the inpatient unit at MARC and began reporting to Shovlain. Over the next several months, beginning almost immediately, Shovlain documented numerous episodes of inappropriate behavior on the part of Valdez in a series of "incident reports." Valdez was suspended for three days in January 1985 for one of those incidents. In February 1985, Valdez was reevaluated, as was customary when a Mercy employee received no salary increase as the result of a negative evaluation. This evaluation was more positive, although it indicated further improvement was warranted. On May 23, 1985, there were three documented incidents involving Valdez and on May 28 he was terminated.

Although Valdez made out a prima facie case of discrimination under *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and its progeny, Mercy "articulated a legitimate, non-discriminatory reason for discharging plaintiff—unsatisfactory performance of his duties." *Valdez v. Mercy Hosp.,* No. 86–183–D–2, Findings of Fact and Conclusions of Law at 6 (S.D.Ia. Sept. 18, 1990). We agree with the District Court's finding that Valdez did not present sufficient evidence of pretext to rebut that finding.

■ In addition, we hold that the District Court's conclusion that Valdez did not sustain his burden regarding his claim of retaliatory discharge is not clearly erroneous. Valdez failed to prove the third element of a prima facie case of retaliatory discharge: that "a causal connection" exists between his protected activity (filing a complaint) and his discharge. *Jackson v. Saint Joseph State Hosp.,* 840 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). We will not hold an employer legally liable for firing an employee who is not performing his job satisfactorily merely because the discharge follows within six months the employee's filing of a civil rights complaint. "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." *Id.* at 1391. Valdez must demonstrate more than speculative backdating of incident reports (which were completed months before the termination and were followed by numerous incident reports that Valdez for the most part agrees were accurate) before we can conclude that the District Court committed clear error in denying Valdez's claim.

■ Finally, Valdez argues that the District Court erred in granting summary judgment to Mercy on his claim under 42 U.S.C. § 1981 (1988) challenging his discharge as retaliatory. The District Court ruled that such a claim was foreclosed by the Supreme Court's opinion in *Patterson,* 491 U.S. 164, 109 S.Ct. 2363, and our en

banc opinion in *Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947 (8th Cir.1991) (en banc). We review de novo and affirm.

In this Circuit, the controlling law at the time of this appeal was *Taggart*, which specifically held that "*Patterson* bars discriminatory discharge claims under section 1981." *Taggart*, 935 F.2d at 948. Valdez contends, however, that his *retaliatory* discharge claim is not precluded by the *Patterson* and the *Taggart* cases.[4]

Valdez asserts that his claim for retaliatory discharge is distinguishable from a claim for discriminatory discharge because he "sought to enforce his employment contract" by "utiliz[ing] the available legal process." Brief of Appellant at 44–45. We do not see how Valdez's legal right to enforce his employment contract could have been infringed by the alleged retaliatory discharge. The right to enforce contracts "embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race." *Patterson*, 491 U.S. at 177, 109 S.Ct. at 2373. Valdez's access to legal process was not impaired by his discharge, as evidenced by this lawsuit. Retaliatory discharge claims were not intended to be actionable under section 1981 as it appeared on the books when Valdez's claim was decided; that was the purpose of Title VII. "Interpreting § 1981 to cover postformation conduct unrelated to an employee's right to enforce his or her contract ... is not only inconsistent with that statute's limitation to the making and enforcement of contracts, but would also undermine the detailed and well-crafted procedures for conciliation and resolution of Title VII claims." *Id.* at 180,

109 S.Ct. at 2374. We hold that Mercy was properly granted summary judgment on Valdez's section 1981 claim under the controlling precedents of *Patterson* and *Taggart*.

■ That does not end the matter. Valdez filed his reply brief on November 4, 1991, and oral argument on this case was heard on February 21, 1992. We now have received a "28(j) letter" from Valdez filed more that a month after argument. Federal Rule of Appellate Procedure 28(j) provides a method whereby a party may supplement cited authorities after filing briefs or after oral argument. Valdez, rather than providing us with citations to authorities that supplement those already supporting an argument made in his main brief, in fact raises a new issue. His contention is that the Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071, 1072 (1991), which abrogates the *Patterson* decision on this section 1981 issue, should be applied retroactively so that Valdez may now benefit from its provisions.[5]

■ Mercy, naturally enough, challenges the use of a 28(j) letter to raise an entirely new issue that might have been raised long before the case was submitted on February 21, 1992.[6] We agree that this new issue has not been raised in a timely manner and is not properly before us in this appeal. Moreover, even if the issue were properly before us, it is already the law of this Circuit that this provision of the Civil Rights Act of 1991 does not apply retroactively to cases in which the challenged actions of the employer occurred before its enactment. *See Fray v. Omaha World*

---

4. Valdez also suggests that we should overrule *Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947 (8th Cir.1991) (en banc). Counsel for Valdez must know that a three-judge panel cannot overrule en banc precedent of this Court. *See Deviries v. Prudential–Bache Sec., Inc.*, 805 F.2d 326, 328 (8th Cir.1986).

5. 42 U.S.C. § 1981(b), as added by the Civil Rights Act of 1991, now reads as follows:
  For purposes of this section, the term "make and enforce contracts" includes the making,

performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071, 1072 (1991).

6. The Civil Rights Act of 1991 was signed into law by President George Bush the same day it was enacted by Congress, November 21, 1991. *See Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1373 (8th Cir.1992).

*Herald Co.,* 960 F.2d 1370, 1378 (8th Cir. 1992).

Finding no merit to any of Valdez's claims on appeal, we affirm the judgment of the District Court.