date of discharge through December 31, 1995 [11], totalling $289,823.00.

 The evidence before this Court does not substantiate the extremely large sum that plaintiff requests for loss of income on savings spent on living expenses, humiliation, emotional injury and loss of enjoyment of life, and injury to his reputation. The credible evidence is that plaintiff has been able to reasonably support himself through a variety of banking or financial-related temporary and permanent jobs. At the time of trial, plaintiff was gainfully employed at a financial institution. Although he testified that since his discharge from the OTS he has been "testy" and somewhat depressed, he has never been nor is currently under a doctor's care for depression or any mental or emotional injuries related to his firing. Finally, no evidence was offered which showed that plaintiff has suffered injury to his reputation; i.e. that his firing and reasons given are well-known in the banking community and have negatively impacted on others' opinion of his personal or professional character. Consequently, given the fact that being fired from a long-held job is in itself an upsetting experience, the Court will award plaintiff $100.00 in compensatory damages.

Finally, the Court determines that reinstatement is not a viable remedy given the circumstances of plaintiff's discharge; consequently, the Court will award plaintiff the total amount of $433,610.00 for future loss of income.

 Haley also contends that he is entitled to attorneys' fees. Section 1831j(c) does not expressly provide for recovery of attorneys' fees unlike several other whistleblower statutes. *See,* e.g., 5 U.S.C. § 1221(g)(1)(B) (CSRA Whistleblower's Statute); 29 U.S.C. § 626(b) and 216b (ADEA Whistleblower's Statute); 29 U.S.C. § 1140 and 1132 (ERISA Whistleblower's Statute); and 42 U.S.C. 9610c (CERCLA Whistleblower's Statute); *see also, Primes v. Parish National Bank, supra.* Generally, attorneys' fees are not recoverable absent clear statutory authority.

*Key Tronic Corp. v. U.S.,* 511 U.S. 809, 814–16, 114 S.Ct. 1960, 1965, 128 L.Ed.2d 797 (1994); *Runyon v. McCrary,* 427 U.S. 160, 185–86, 96 S.Ct. 2586, 2601–02, 49 L.Ed.2d 415 (1976); *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). Consequently, in the absence of any clear provision for recovery of attorneys' fees in § 1831j, this Court denies plaintiff's request for attorneys' fees.

In summary, the Court awards plaintiff $289,823.00 in back pay and benefits; $100.00 in compensatory damages; and $433,610.00 for future loss of income, together with legal interest from the date of this judgment, and applicable court costs.

For the foregoing reasons, the Court enters judgment for the plaintiff and against the defendant on the merits of the plaintiff's complaint.

**Mary E. COMSTOCK, Plaintiff,**

v.

**CONSUMERS MARKETS, INC., et al., Defendants.**

**No. 95–4392–CV–C–5.**

United States District Court, W.D. Missouri, Central Division.

Nov. 14, 1996.

---

**11.** Since no evidence was offered which updated Exhibit 88, the Court will not order back pay and benefits subsequent to December 31, 1995.

Janice P. Noland, Noland & Assoc., P.C., Camdenton, MO, for plaintiff.

Michael G. Berry, Michael A. Dallmeyer, Hendren & Andrae, Jefferson City, MO, for defendants.

### MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT

LAUGHREY, District Judge.

Pending before the Court is Defendants' Motion for Complete Summary Judgment, together with suggestions in support, filed on September 17, 1996. Plaintiff filed suggestions in opposition on October 24, 1996, to which Defendants filed reply suggestions on October 30, 1996.[1] After due consideration of the above, and for the reasons set forth below, Defendants' Motion is granted.

### I. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prod. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991) (citation omitted). The main purpose of a motion for summary judgment, however, is to identify factually unsupported claims. If a plaintiff has the burden of proof at trial on a claim and the defendant has filed a motion for summary judgment, the plaintiff must identify admissible evidence sufficient to make a submissible case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). If the plaintiff cannot identify such facts, the defendant is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186–3187, 111 L.Ed.2d 695 (1990) (*quoting Celotex, supra*, 477 U.S. at 322, 106 S.Ct. at 2552).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*

---

1. By Motion received by the Court on October 16, 1996, Plaintiff sought an extension of time to file her suggestions in opposition to Defendant's Motion based upon the fact that she did not receive her service copy of the Motion. By Order dated October 17, 1996, the Court reminded the parties of the November 18, 1996, trial setting and extended the deadline for Plaintiff's filing of her opposition up to and including October 21, 1996. The Court faxed and mailed a copy of the Order to Plaintiff on October 17, 1996.

v. Zenith Radio Corp., *475 U.S. 574, 586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial.* Anderson, supra, *477 U.S. at 248, 106 S.Ct. at 2510* (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., *391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).*

Because employment discrimination cases are rarely accompanied by direct evidence, summary judgments should be used "only in those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson v. Minn. Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991) (*citing Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)).

With these principles in mind, the Court turns to an examination of the facts.

## II. Factual Background

Pursuant to Local Rule 13(G), Defendants Suggestions in Support begin with separately numbered paragraphs of concise statements of uncontroverted facts. Each fact is supported by reference to a specific part of the record where the fact is established. Rule 13(G) requires Plaintiff to specifically list the facts she contends are in dispute, and to "refer specifically to those portions of the record upon which [she] relies." Although Plaintiff's Opposition references or cites most of the paragraphs set forth by Defendants, Plaintiff's responses to those paragraphs are merely conclusory assertions of ultimate facts and/or argument. Additionally, not one of Plaintiff's responses are supported by record citation, affidavit or otherwise. Accordingly, pursuant to Rule 13(G)(1), those facts which are uncontroverted, are deemed admitted for the purpose of this Order, and together with those uncontroverted facts set forth in Plaintiff's Suggestions in Opposition, form the basis for the Court's understanding of the factual background of this case.

Beginning in 1985, Plaintiff Mary Comstock, worked as a Meat Wrapper at Consumers Market in Osage Beach Missouri. On April 30, 1994, Ms. Comstock was placed on indefinite suspension and on May 5, 1994, she was discharged from her employment. Plaintiff's lawsuit is brought against her former employer, Defendant Consumers and her former supervisor, Danny Pollock. Plaintiff's Amended Complaint contains two counts: Count I—Title VII, 42 U.S.C. § 2000e, and Count II—Intentional Infliction of Emotional Distress.[2] Under Count I, Plaintiff alleges discrimination on the basis of sex and retaliation. More specifically, Plaintiff alleges a discriminatory failure to promote claim in that men were promoted to Journeyman Meat Cutter, but Plaintiff was not. (Amended Complaint at ¶ 18). Plaintiff also generally alleges that Defendant Pollock used abusive language towards her, harassed her and intimidated her. (Amended Complaint at ¶ 8). Plaintiff further alleges that she was discharged in retaliation for her opposition to unlawful employment practices. (Amended Complaint at ¶ 24).

The Missouri Commission on Human Rights filed Plaintiff's Charge of Discrimination on February 27, 1995. Such Charge was dually filed with the Equal Employment Opportunity Commission ("EEOC"). The Missouri Commission dismissed Plaintiff's Charge on the basis that it was untimely filed.

## III. Count I—Title VII

### A. Sex Discrimination Claim

There is no direct evidence of discrimination alleged in this case. The analysis for Title VII claims based upon indirect evidence follows the familiar three-step process set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff first must be able to prove a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981). If done, this creates a rebuttable presumption of discrimination which shifts to the defendant the burden of producing evidence that its acts were the result of legitimate, nondiscriminatory rea-

---

**2.** By Order dated August 1, 1996, the Court dismissed Plaintiff's Title VII claim against Defendant Pollock on the basis that there is no individual liability under the statute.

sons. *Id.* at 253, 101 S.Ct. at 1093–1094. *See also Gray v. University of Arkansas at Fayetteville,* 883 F.2d 1394, 1398 (8th Cir. 1989). If defendant succeeds, then the plaintiff must raise a genuine issue of fact as to whether the employer's proffered reasons were pretextual. *Gray,* 883 F.2d at 1398. A reason cannot be a pretext for discrimination unless the plaintiff can demonstrate both that the reason is false and discrimination was the real, motivating reason. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–517, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

### 1. Failure to Promote [3]

■ Plaintiff in this case alleges a discriminatory failure to promote claim. Plaintiff specifically alleges that "she never was promoted to a journeyman meat cutter in her ten (10) years of tenure, although men were so promoted." (Amended Complaint at ¶ 18). Journeyman Meat Cutter is the only position Plaintiff alleges in her Amended Complaint that she was discriminatorily denied.[4]

The requisite elements of a prima facie case for discriminatory failure to promote are as follows:

1. She is a member of a protected group;

2. That she applied for and was qualified for a job in which the employer was seeking applicants;

3. That despite her qualifications, she was rejected; and

4. That after rejection the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

*Netterville v. State of Missouri,* 800 F.2d 798, 802 (8th Cir.1986).

In the instant case, there is no dispute with respect to the first element, Plaintiff is a member of a protected group. Furthermore, there is no dispute with respect to the fourth element; Plaintiff never occupied the position of Journeyman Meat Cutter. Focusing then on the second element, Defendant Consumers has submitted the sworn affidavit of the store manager, Mr. Danny Pollock, which states that Ms. Comstock never expressed interest to him in training to become a Meat Cutter. At the pre-trial conference, the Plaintiff's attorney asserted that the Plaintiff would testify at trial that she had expressed an interest in advancement but she had never applied to be a Meat Cutter or sought training as a Meat Cutter.

In order to establish that Plaintiff "applied" for a position, she need not necessarily file a formal application. *Fowle v. C & C Cola,* 868 F.2d 59, 68 (3rd Cir.1989). "Generally speaking, . . . it is sufficient to make out a prima facie case for a plaintiff to 'establish that the company had some reason or duty to consider [her] for the post.'" *Id.* Examples of circumstances under which such a reason or duty may arise include situations where a company has a policy which requires it to consider laid off employees for rehire (*see E.E.O.C. v. MCI Internat'l., Inc.,* 829 F.Supp. 1438, 1482 (D.N.J.1993)) or where an employer gives no formal notice of availability of job positions (*see Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1133 (11th Cir.1984)). Plaintiff in this case, has failed to adduce any material in the record sufficient to show that she filed a formal application or that Defendant Consumers had any reason or duty to consider her for the position of Journeyman Meat Cutter. Accordingly, the Court has no evidence from

---

**3.** Defendant Consumers argues that Plaintiff failed to file her charge of discrimination within 300 days of the alleged discriminatory failure to promote. (Defendant's Sugg. at pp. 6–8). Although Plaintiff's Suggestions in Opposition fail to address the merits of Defendant's argument, a review of the record in this case reveals an affidavit filed by Plaintiff's counsel. The affidavit provides that Plaintiff sent her charge of discrimination to the Missouri Commission on Human Rights ("MCHR") in September 1994. Although the MCHR did not treat the Charge as being filed until February 1995, the Court will give Plaintiff

the benefit of the doubt, and assume for argument that the Charge was filed in September 1994.

**4.** Although Plaintiff's Amended Complaint asserts that a training manual sets forth a policy that Meat Department personnel began employment as Meat Wrappers or Apprentices, "and after two years training should become a Journeyman Meat Cutter," Plaintiff has offered no further evidence in support of this allegation. (Amended Complaint at ¶ 17).

which a juror could find that Plaintiff applied for the position of Journeyman Meat Cutter.

Additionally, with respect to Plaintiff's qualifications, she need only show that she had "the minimum requirements for the position." *Netterville, supra,* 800 F.2d at 802. However, Plaintiff has failed to meet this burden. Plaintiff acknowledges that she could not be a Meat Cutter because she had no training as a Meat Cutter. (Plaintiff's Depo. at p. 45). However, Plaintiff argues that Defendant Consumers should have invested in training for her to be a Meat Cutter when openings occurred. (Plaintiff's Depo. at p. 46). However, as set forth below, Plaintiff has failed to provide any evidence to the Court that Consumers provided such training to anyone. Plaintiff acknowledges that "most of the actual meat cutters they hired was already trained." (Plaintiff's Depo. at p. 50).

Turning to the fourth element of Plaintiff's prima facie case, there is only one male, Mike Rodden, whom Plaintiff alleges was arguably similarly-situated to her. Mr. Rodden was hired in 1993. (Plaintiff's Depo. at pp. 47–50). According to Plaintiff, Mr. Rodden was "kind of a clean-up boy ... [who] did some cutting." (Plaintiff's Depo. at pp. 47–48). Mr. Rodden did not cut meat as a regular part of his duties. (Plaintiff's Depo. at p. 48). Plaintiff does not know whether Mr. Rodden was paid as a Meat Cutter, and further does not know what training, if any, Mr. Rodden received from Consumers to be able to cut meat. (Plaintiff's Depo. at pp. 48–50).

Even though the burden of establishing a prima facie case is "not onerous," *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–1094, Plaintiff has failed to meet her burden in this case. Accordingly, summary judgment is appropriate as to Plaintiff's failure to promote claim. *See Richmond v. Board of Regents of University of Minn.,* 957 F.2d 595, 598 (8th Cir.1992) (summary judgment upheld where employee failed to prove she was qualified for the position).

### 2. Hostile Environment

■ Although Plaintiff's Amended Complaint references an "intimidating" and/or "hostile" work environment, Plaintiff's Opposition to Defendants' Motion for Summary Judgment specifically states that "[t]here is no claim of hostile work environment for sexual harassment." (Plaintiff's Opp. at pp. 4, 5). Plaintiff asserts that her allegations of a hostile work environment "are not at all related to [her] sexual discrimination [claim], but to [Plaintiff's claim] of intentional infliction of emotional distress." (Plaintiff's Opp. at p. 5). During the pre-trial conference, Plaintiff's counsel reaffirmed that Plaintiff was not alleging hostile environment sexual harassment in this case. Accordingly, Plaintiff has abandoned any claim she may have had of hostile environment sexual harassment under Title VII.

■ Even if Plaintiff had not abandoned her claim, the evidence when viewed in the light most favorable to the Plaintiff, does not establish a legally cognizable hostile environment under Title VII.

In order to maintain a claim for hostile environment sexual harassment under Title VII, a an employee must establish the following:

(1) she belongs to a protected group;

(2) she was subject to unwelcome sexual harassment;

(3) the harassment was based on sex;

(4) the harassment affected a term, condition, or privilege of employment; and

(5) her employer knew or should have known of the harassment and failed to take proper remedial action.

*Callanan v. Runyun,* 75 F.3d 1293, 1297 (8th Cir.1996). "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (*citing Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971) *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)). In order for the alleged sexual harassment to be actionable, "it must be sufficiently severe or pervasive 'to alter the conditions of employment and create an abusive working environment.'" *Meritor, supra,* 477 U.S. at 67, 106

S.Ct. at 2405 (citation omitted). *See also Harris v. Home Sav. Ass'n,* 730 F.Supp. 298 (W.D.Mo.1989) (relatively minor inconveniences or irritations which an employee "suspects" related to her race simply are not actionable).

Whether an environment is "hostile" or "abusive" is determined by looking at several factors, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. *Id.* at 20–22, 114 S.Ct. at 370. Moreover, the alleged acts need not be explicitly sexual in nature. "Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances." *Hall v. Gus Const. Co. Inc.,* 842 F.2d 1010, 1014 (8th Cir.1988).

Ms. Comstock testified during her deposition that Defendant Pollock frequently criticized her work; held her responsible for duties which she did not believe were hers; compared her legs to those of another co-worker in 1989; on occasion, prior to 1989, made the statement that women were to be subject to men; allowed a male employee to wear her meat jacket as a Halloween costume; and posted a photograph of all the meat department employees in which the Plaintiff's knees were showing. Plaintiff also alleges that on October 31, 1989 some unidentified person wrote "bitch" on her time card. Plaintiff acknowledges that Defendant Pollock never made any lewd comments to her or any other women in the store. (Plaintiff's Depo. at p. 102).

More than a few isolated incidents of harassment must have occurred to establish a violation of Title VII. Instead of sporadic incidents, there must be a steady barrage of opprobrious offensive comments. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981). *See also Cariddi v. Kansas City Chiefs Football Club,* 568 F.2d 87, 88 (8th Cir.1977) (affirming district court's holding that occasional ethnic slurs were not so excessive and opprobrious as to be an unlawful employment practice under Title VII). As the Eighth Circuit noted in *Moylan v. Maries County,* 792 F.2d 746, 749–50 (8th Cir.1986):

> The plaintiff must show a practice or pattern of harassment against her or him; a single incident or isolated incidents generally will not be sufficient. The plaintiff must generally show that the harassment is sustained and non-trivial.

Conduct that is merely offensive is insufficient to implicate Title VII. *Harris, supra,* 510 U.S. at 20–22, 114 S.Ct. at 370.

Turning to an analysis of Plaintiff's prima facie case, the evidence before the Court is so one-sided that Defendant must prevail as a matter of law. Plaintiff has presented no evidence that the workplace was permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe and pervasive to alter the conditions of the [Plaintiff's] employment and create an abusive working environment." *Id.* In this case, even though the alleged comments and actions may be insensitive, they are too mild and infrequent to constitute a hostile environment under Title VII. Accordingly, even if Plaintiff had not abandoned her claim of hostile environment sexual harassment, the allegations in this case are insufficient to survive summary judgment.

### 3. Retaliatory Discharge

■ Plaintiff's Amended Complaint generally alleges that she was discharged in retaliation for her opposition to Defendant's unlawful employment practices. (Amended Complaint at ¶ 24). Plaintiff Opposition to Defendant's Motion specifically asserts that she was discharged in retaliation for previously filing a lawsuit against Defendants. (Plaintiff's Opp. at p. 5).[5] In the pre-trial

---

**5.** Plaintiff's Amended Complaint further alleges Plaintiff reported several complaints to Defendants regarding Mr. Pollock's abusive language, harassment and intimidation. (Amended Com-

conference, Plaintiff's attorney additionally argued that Plaintiff was discharged because Defendant Consumers learned that Plaintiff intended to file a charge of discrimination. Plaintiff's attorney, however, acknowledged that the only evidence she had on this issue was her own testimony that she told the Defendant's lawyer that she intended to file a discrimination claim.

In order to establish a prima facie case of unlawful retaliation, a plaintiff must show (1) she engaged in statutorily protected activity; (2) she was subject to an adverse employment action after engaging in a protected activity, and (3) there was a causal connection between the adverse employment action and the protected activity. *Evans v. Kansas City Mo. School Dist.,* 65 F.3d 98, 100 (8th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996) (citations omitted). The initial inquiry for the Court is whether Plaintiff engaged in any "protected activity."

Section 2000e–3(a) provides protection from retaliation to individuals who engage in "protected activity." "Protected activity" under Title VII includes, (1) opposition to employment practices prohibited under Title VII, and (2) filing a charge, testifying, assisting or participating "in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a) (1994). Under § 2000e–3(a), an employer may not retaliate against an individual who engages in either of these specific "protected activities." To prove an individual engaged in protected activity, Plaintiff must "demonstrate a good faith, reasonable belief that the underlying challenged action violated [Title VII]." *Wentz v. Maryland Cas. Co.,* 869 F.2d 1153, 1155 (8th Cir.1989) (citations omitted).

In this case, the only "protected activity" alleged in Plaintiff's Opposition is the filing of a lawsuit against Defendant Consumers. Defendant Consumers acknowledges that Plaintiff filed a lawsuit in the Circuit Court of Camden County, Missouri, on November 24, 1993, prior to Plaintiff's discharge. However, as noted by Defendant Consumers, such lawsuit was not brought under Title VII, nor

did such suit allege that Defendant Consumers or Defendant Pollock engaged in any action which violated Title VII. Accordingly, Plaintiff was not contesting any unlawful employment practice which would entitle her to protection under Title VII's anti-retaliation provisions. *See Wiehoff v. GTE Directories Corp.,* 61 F.3d 588, 598 (8th Cir.1995) (dismissal of retaliation claim affirmed where plaintiff failed to establish prima facie case because his complaint was only of mistreatment, and not specifically of mistreatment due to his age); *Evans, supra,* 65 F.3d at 101–102 (dismissal of complaint ordered where Plaintiff was not contesting any unlawful employment practice). Accordingly, Plaintiff's previous lawsuit does not constitute "protected activity" under the statute.

■ As referenced earlier, during the pretrial conference, Plaintiff informed the Court that prior to Plaintiff's discharge, her attorney, Ms. Noland, telephoned an attorney for Defendant Consumers and told the attorney that she intended to file a charge of discrimination with the EEOC. Communication of intent to file a charge with the EEOC has been held to constitute "protected activity" under Title VII. *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.,* 549 F.Supp. 1, 6–7 (C.D.Cal.1980), *rev'd other grounds,* 685 F.2d 1149 (9th Cir.1982). Wholly apart from the admissibility questions surrounding the issue of whether Defendant Consumers' attorney conveyed this information to his/her client, the Court turns its attention to the causal connection prong of Plaintiff's prima facie case.

Plaintiff has offered no evidence that her discharge was linked to her communication of her intent to file a charge with the EEOC. In the instant case, Ms. Comstock, not the Defendants, initiated the events leading to her termination. The undisputed evidence shows that the Plaintiff (1) tore up a performance review in front of the store manager, (2) handed the store manager a list of words and their meanings and told him to study them before he gave the Plaintiff another evaluation, (3) told the store manager that

---

plaint at ¶ 13). These allegations are not repeated nor expanded upon in Plaintiff's Opposi-

tion, nor are they alleged with enough specificity to survive summary judgment under *Celotex.*

she did not want to speak to him without her attorney present, (4) insisted on tape recording any conversation she had with the store manager, (5) laughed at the store manager when he gave her an incident report for her behavior, and (6) used foul language to a fellow employee after the store manager placed the Plaintiff on indefinite suspension. (Defendant's Sugg. at p. 10). Plaintiff does not dispute these facts in either her Opposition to Defendants' Motion or in her deposition.

As noted by the Court in *Valdez v. Mercy Hosp.*, 961 F.2d 1401, 1403 (8th Cir.1992), an employer should not be held liable for firing an employee for legitimate, non-discriminatory reasons, simply because the discharge follows a civil rights complaint.[6]

> Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with peers.

*Id.* (*quoting Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390 (8th Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). Plaintiff in this case has not established the causal connection element of a prima facie case, and accordingly, summary judgment on Plaintiff's retaliation claim is appropriate. *See Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 474 (8th Cir.1995) (summary judgment affirmed where plaintiff failed to establish causal connection; plaintiff initiated termination by leaving work without notification and by her conduct at follow up meeting with management); *Valdez, supra,*

961 F.2d at 1403 (court affirmed finding that plaintiff had failed to prove causal connection between protected activity and discharge).

■ Furthermore, even if Plaintiff was able to establish the elements of a prima facie case, the events itemized above established a legitimate, non-discriminatory reason for her discharge. A decision to terminate which is based upon legitimate, non-discriminatory reasons will preclude recovery, irrespective of any protected activity. *Clay v. Consumer Programs, Inc.*, 576 F.Supp. 185, 190 (E.D.Mo.1983) (plaintiff introduced no credible evidence to support allegation that his termination was in retaliation for his EEOC filing and in fact, termination was caused by his insubordination and attitude problems). Plaintiff has offered no evidence of pretext to rebut Defendant Consumer's articulated legitimate, non-discriminatory reason for Plaintiff's discharge. Accordingly, summary judgment is appropriate on such claim.

## IV. Count II—Intentional Infliction of Emotional Distress

■ Under Missouri law, the elements of a cause of action for intentional infliction of emotional distress are:

(1) defendant's conduct was extreme and outrageous,

(2) defendant acted in an intentional or reckless manner, and

(3) such conduct resulted in severe emotional distress.

*roga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3rd Cir.), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) ("inference based on timing alone" was insufficient in light of other evidence presented.) In the present case, Plaintiff had filed five (5) different worker's compensation claims against Defendant over the years of her employment, Plaintiff's previous lawsuit was pending for over 6 months before Plaintiff was terminated, and Plaintiff's notice of her intent to file an EEOC was alleged to have been in March, 1994, over two (2) months before Plaintiff's discharge. Under the facts of this case, any inference of causal connection based upon temporal proximity would be "rank speculation" in light of the events which immediately preceded the discharge.

---

**6.** Although a couple of Eighth Circuit cases have held that temporal proximity establishes "the final required element in a prima facie case of retaliatory discharge," (*See Couty v. Dole*, 886 F.2d 147, 148 (8th Cir.1989), more recent cases in the Circuit have held that an inference based upon timing alone may be insufficient in light of other evidence presented. *See Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346–347 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 61, —— L.Ed.2d —— (1996) (*citing Caudill v. Farmland Indus. Inc.*, 919 F.2d 83, 86–87 (8th Cir.1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal connection between the two events, in light of other evidence presented.) *See also Qui-*

*See Hendrix v. Wainwright Indus.,* 755 S.W.2d 411, 412 (Mo.App.1988) (*citing Hayes v. Dunn,* 709 S.W.2d 164 (Mo.App.1986)). Missouri law requires that the resulting emotional distress be "medically diagnosable and . . . of sufficient severity so as to be medically significant." *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–73 (Mo.1983) (en banc). Examples of harm meeting the required threshold include "continuing nervousness, sleeplessness, or nausea for which a physician would prescribed medication." *Id.* at 773 n. 4. "Mere upset, dismay, humiliation, grief, and anger" are not enough to support recovery. *Id.* Additionally, in cases where no physical injury has occurred, Missouri courts have held that such injuries are compensable only when supported by expert medical testimony. *See Skyles v. Burge,* 830 S.W.2d 497, 500 (Mo.App.1992); *Childs v. Williams,* 825 S.W.2d 4, 10 (Mo.App.1992) ("Expert *medical* testimony is the exclusive means to meet this requirement."); *Van Eaton v. Thon,* 764 S.W.2d 674, 676 (Mo.App.1988). *See also Greco v. Robinson,* 747 S.W.2d 730, 735 (Mo. App.1988) (summary judgment affirmed where plaintiffs failed to provide any expert medical testimony in support of their claim).

■ In the instant case, Plaintiff's Amended Complaint includes general allegations of "severe emotional, psychological and mental fear, anguish and distress" and physical distress and "shock to her nervous system." (Complaint at ¶¶ 8 and 29). Although counsel for Plaintiff failed to point the Court to the relevant portions of the record which support her claim, Plaintiff's deposition testimony indicates that Plaintiff had problems sleeping at night and that she suffered from low self-esteem. (Plaintiff's Depo. at pp. 119–124). Although Plaintiff requested that her physician provide her with medication, she is not sure what medication she received. (Plaintiff's Depo. at pp. 122). During the pre-trial conference, Defendants submitted to the Court, the evaluation of S.D. Parwatikar, M.D. FRCP(C). The report provides that Dr. Parwatikar diagnosed Plaintiff as suffering from mild anxiety, for which no medical

treatment is necessary or required. The report also provides that during the evaluation, Plaintiff reported that "she was treated off and on [during her conflict on the job] with antianxiety medication, Lorazepam by her family physician, however, no evidence of formal diagnosis of any emotional disorder at that time is available." [7] Plaintiff has never seen a psychiatrist or a psychologist. Her first contact with a counselor for her emotional problem occurred in November 1996.

In Plaintiff's Opposition, Plaintiff argues that the *Bass* test has been met and that "[t]he evidence as to her emotional distress will be easily proven by her testimony." (Plaintiff's Opp. at p. 6). The law, however, requires expert testimony to establish that Plaintiff suffered from "medically diagnosable" or "medically significant" distress. Summary judgment is appropriate as to Count II because Plaintiff has failed to designate an expert, or to offer any expert testimony, in support of her claim. *See Childs, supra,* 825 S.W.2d at 10; *Skyles, supra,* 830 S.W.2d at 500.

■ Defendants are also entitled to summary judgment as to Count II for an additional reason. In order for the Defendants' conduct to be sufficiently extreme and outrageous so as to support a claim for intentional infliction of emotional distress, the conduct "must be more than simply malicious or intentional." *J.R. v. P.B.A.,* 773 S.W.2d 235, 236 (Mo.App.1989) (*citing Viehweg v. Vic Tanny Int'l of Missouri, Inc.,* 732 S.W.2d 212, 213 (Mo.App.1987)). The Plaintiff must demonstrate that Defendants' conduct was

> so extreme as to be beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community. It must be beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* (citations omitted). It is for the Court to determine whether the Defendants' conduct arises to a sufficient level to permit recovery. *Id.* at 236 (*citing Wilt v. KC Area Transp.*

---

7. Plaintiff also reported to Dr. Parwatikar, that in August of this year, her family doctor prescribed Lorazepam due to her anxiety surrounding the trial of her lawsuit. Plaintiff reported

that she took the medication for a short period of time, and now takes it only when she "feels like choking and has trouble with her throat."

**1106**

*Authority,* 629 S.W.2d 669, 671 (Mo.App. 1982)). *See also Hopper v. Hallmark Cards, Inc.,* 87 F.3d 983, 990–991 (8th Cir.1996) (Because determination of outrageousness rests with the judge, the "claim is particularly amenable to disposition on summary judgment.")

Ms. Comstock's allegations do not meet the requisite standard to survive summary judgment. In support of her claim, Ms. Comstock testified during her deposition that Defendant Pollock frequently criticized her work; held her responsible for duties which she did not believe were hers; compared her legs to those of another co-worker in 1989; on occasion, prior to 1989, made the statement that women were to be subject to men; allowed a male employee to wear the Plaintiff's meat jacket; and posted a photograph of all the meat department employees in which the Plaintiff's knees were showing. Plaintiff also alleges that on October 31, 1989, some unidentified person wrote "bitch" on her time card. These episodes are at most insensitive and unkind, but not outrageous. Ms. Comstock's other claims of outrageous conduct (e.g. being harassed, belittled, humiliated, threatened, etc.) are alleged without the specificity sufficient to withstand summary judgment. *See Anderson, supra,* 477 U.S. at 248–250, 106 S.Ct. at 2510–2511. Therefore, the Court will grant summary judgment to Defendants on Plaintiff's claim of intentional infliction of emotional distress as set forth in Count II of Plaintiff's Amended Complaint.

### ORDER

For the foregoing reasons, it is hereby

ORDERED that summary judgment is GRANTED to Defendant Consumers on Plaintiff's claims set forth in Count I of Plaintiff's Amended Complaint. It is further

ORDERED that summary judgment is GRANTED to Defendants on Count II of Plaintiff's Amended Complaint.